# EXHIBIT 1

DATE FILED: December 30, 2023 10:25 AM
FILING ID: B53A7ED6EBE2E
CASE NUMBER: 2023CV31224

| | |
|---|---|
| **DISTRICT COURT, BOULDER COUNTY STATE OF COLORADO**<br>1776 6th Street<br>Boulder, Colorado 80302<br><br>_____<br><br>**Plaintiff: ALEXANDER STICKELBERGER**<br><br>**v.**<br><br>**Defendants: GENERAL SECURITY NATIONAL INSURANCE COMPANY; BRANCH FINANCIAL INC.** | **^COURT USE ONLY^** |
| *Attorneys for Plaintiff*:<br>Katherine E. Goodrich, No. 48853<br>Rodney J. Monheit, No. 48919<br>MoGo LLC<br>600 17th St., Ste. 2800 South<br>Denver, CO 80202<br>Tel: 303.357.1317<br>katie@mogollc.com<br>rodney@mogollc.com<br><br>Natascha O'Flaherty, No. 22183<br>Never Summer Law, LLC<br>70 E Agate Ave, Unit H<br>PO Box 321<br>Granby, CO 80446<br>Tel: 970.557.3755<br>natascha@neversummerlaw.com | **Case No:**<br><br>**Div.** |

## COMPLAINT

COMES NOW the Plaintiff, Alexander Stickelberger, by and through his counsel at

MoGo LLC and Never Summer Law, LLC, and for his Complaint alleges and avers as follows:

### INTRODUCTION

1.      In December 2021, a devastating wildfire broke out in Boulder County, Colorado. Strengthened by wind gusts exceeding 100 miles per hour, the "Marshall Fire" burned 6,080 acres and destroyed over 1,000 homes.[1]

2.      On December 31, 2021, President Biden declared the Marshall Fire a major disaster and ordered Federal aid to supplement State and local recovery efforts.[2]

3.      This action concerns the delay and denial of payment of insurance benefits covering Mr. Stickelberger's home, and all of the belongings inside, which burned to the ground as a result of the Marshall Fire.

4.      Colorado law recognizes that insurance is a unique product that is purchased not for commercial advantage, but for peace of mind; for protection against financial calamity and uncertainties. An insurance company's promise of security has real value. Those fortunate enough to never experience loss, and therefore never collect a penny from their insurers, spend their money for the sole purpose of security and peace of mind.

5.      Colorado law recognizes that there is a disparity in bargaining power between the insurer and the insured:  "Contract damages offer no motivation whatsoever for the insurer *not* to breach. If the only damages an insurer will have to pay upon a judgment of breach are the amounts that it would have owed under the policy plus interest, it has every interest in retaining

---

[1] https://www.cbsnews.com/colorado/news/boulder-county-marshall-fire-two-fires-xcel-energy/ (accessed October 3, 2023).
[2] https://www.whitehouse.gov/briefing-room/statements-releases/2022/01/01/president-joseph-r-biden-jr-approves-colorado-disaster-declaration/ (accessed October 3, 2023).

the money, earning the higher rates of interest on the outside market, and hoping eventually to force the insured into a settlement for less than the policy amount."[3]

6.      In Colorado, insurance companies are subject to special remedies if they fail to honor their promises. In this action, Mr. Stickelberger seeks damages for General Security's breach of insurance contract, bad faith breach of insurance contract, and violation of C.R.S. § 10-3-1115.

7.      Mr. Stickelberger also was not adequately insured, with his agent having reduced his coverage shortly before the fire, without providing notice of that reduction in coverage.

## PARTIES, JURISDICTION & VENUE

8.      Mr. Stickelberger is a citizen of the State of Colorado.

9.      General Security National Insurance Company ("General Security") is an insurance company domiciled in the State of New York with its principal place of business in New York, New York.

10.      Branch Financial Inc. ("Branch") is an insurance agency domiciled in the State of Ohio with its principal place of business in Columbus, Ohio.

11.      At all relevant times, General Security was authorized to conduct the business of insurance in the State of Colorado, and conducted the business of insurance in Colorado.

12.      At all relevant times, Branch was authorized to conduct the business of insurance in the State of Colorado, and conducted the business of insurance in Colorado.

---

[3] *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 468 (Colo. 2003).

13.     Branch sold Mr. Stickelberger a homeowner's insurance policy, number 996108220-home-001-SC (the "Policy," attached as **Exhibit 1**), which covered real and personal property located at  125 Mohawk Circle, Superior, Colorado 80027 (the "Property").

14.     This Court has subject matter jurisdiction because the events complained of occurred in Colorado and the resolution of this dispute requires the application of Colorado law. Colo. Const. art. VI § 9(1).

15.     This Court has personal jurisdiction over General Security and Branch pursuant to C.R.S. § 13-1-124(1)(a), (b) and (d), because General Security and Branch conducted the business at issue in this action, committed tortious acts, and contracted to insure the Property in Colorado.

16.     Pursuant to C.R.C.P. 98(c), venue is proper in this judicial district, which Mr. Stickelberger designates as the place of trial.

## FACTUAL ALLEGATIONS

17.     On May 6, 2021, Mr. Stickelberger submitted an application for insurance online through Branch's website.

18.     The information Mr. Stickelberger was able to submit over the website to Branch was the property address, his name, email address, and phone number.

19.     Mr. Stickelberger submitted his contact information and the Property address correctly.

20.     Branch assigned agent Mark Giresi to procure a policy for Mr. Stickelberger.

21.    Mr. Giresi was acting as an authorized agent of Branch at all times relevant to the allegations in this Complaint.

22.    Branch was acting as an authorized agent of General Security at all times relevant to the allegations in this Complaint.

23.    The Branch website did not allow Mr. Stickelberger to select a different policy limit, to select policy riders, to indicate square footage, or select endorsements including ordinance and law coverage.

24.    Branch did not offer ordinance and law coverage.

25.    Branch had a monetary cap on the additional living expense coverage offered under the Policy.

26.    Due to the monetary cap, Branch did not offer two years of additional living expense coverage.

27.    On or about May 6, 2021, Mr. Giresi called Mr. Stickelberger to complete the purchase of the policy. The policy that Mr. Stickelberger applied for and signed off on on May 6, 2021, had the following coverage limits:

| COVERAGE DETAILS FOR THE INSURED PROPERTY | |
|---|---|
| Coverage | Limits of Liability |
| Dwelling Protection | $424,000.00 |
| Increased Building Structure Protection | 20% of Dwelling Coverage Limit |
| Other Structures Protection | $42,400.00 |
| Personal Property Protection | $254,400.00 |
| Additional Living Expense | Up to 24 months not to exceed $84,800.00 |
| Family Liability Protection | $300,000.00 each occurrence |
| Guest Medical Protection | $1,000.00 each person |
| Roof Surfaces Extended Coverage | Included |
| Water Backup | Not Purchased |
| Building Codes | Not Purchased |

28.     In the May 6, 2021 policy packet, Branch erroneously listed the square footage of the Property as 1,500 square feet.

29.     Upon information and belief, Branch set the policy limits based on calculations by 360Value.

30.     On or about May 10, 2021, Branch performed a physical inspection of the Property in the course of underwriting the Policy.

31.     The square footage of the home on the Property was publicly available via county records.

32.     On May 10, 2021, Mr. Stickelberger emailed Mr. Giresi and asked that the square footage be corrected from 1,500 square feet to 2,250 square feet.

33.     Mr. Stickelberger and Mr. Giresi spoke on the phone about the square footage and other inaccuracies (the number of stories is 2.5, not 1 as listed on the application) on or about May 12, 2021.

34.     During that phone call, Mr. Stickelberger also informed Mr. Giresi of extensive renovations he had performed to the home, including all new high-end stainless steel appliances, all new hardwood floors, new high efficiency windows, new exterior doors and skylights, and addition of a Tesla solar system on the roof.

35.     Despite receiving information regarding the custom finishes and remodeling that had been performed, Mr. Giresi changed the home quality from "custom" to "above average." Mr. Giresi did not advise Mr. Stickelberger of that change.

36.     The Property was initially properly written as a custom home on the Policy.

37.     On May 12, 2021, General Security issued and bound the Policy, for homeowners' insurance covering the Property, reflecting the following limits of insurance, and with effective dates of May 23, 2021 to May 23, 2022:

| COVERAGE DETAILS FOR THE INSURED PROPERTY | |
|---|---|
| Coverage | Limits of Liability |
| Dwelling Protection | $423,000.00 |
| Increased Building Structure Protection | 20% of Dwelling Coverage Limit |
| Other Structures Protection | $42,300.00 |
| Personal Property Protection | $253,800.00 |
| Additional Living Expense | Up to 24 months not to exceed $84,600.00 |
| Family Liability Protection | $300,000.00 each occurrence |
| Guest Medical Protection | $1,000.00 each person |
| Roof Surfaces Extended Coverage | Included |
| Water Backup | Not Purchased |
| Building Codes | Not Purchased |

38.    Branch caused numerous different application, binders, and policy jackets to be transmitted to Mr. Stickelberger between May 12, 2023 and May 14, 2021.

39.    Mr. Stickelberger signed the Policy with a dwelling limit of $423,000.00 on May 13, 2023, without noticing that the version he signed did not reflect the increased limit from the $424,000.00 limit as requested from Mr. Giresi.

40.    On May 25, 2021, after the Policy was bound, Branch decreased the Policy limits as follows:

| COVERAGE DETAILS FOR THE INSURED PROPERTY | |
|---|---|
| Coverage | Limits of Liability |
| Dwelling Protection | $402,000.00 |
| Increased Building Structure Protection | 20% of Dwelling Coverage Limit |
| Other Structures Protection | $40,200.00 |
| Personal Property Protection | $241,200.00 |
| Additional Living Expense | Up to 24 months not to exceed $80,400.00 |
| Family Liability Protection | $300,000.00 each occurrence |
| Guest Medical Protection | $1,000.00 each person |
| Roof Surfaces Extended Coverage | Included |
| Water Backup | Not Purchased |
| Building Codes | Not Purchased |

41.    Mr. Stickelberger did not receive written confirmation indicating that his coverage was reduced.

42.    Mr. Stickelberger did not sign an agreement reflecting the reductions in coverage.

43.    Mr. Stickelberger intended to increase his coverage limits commensurate with the square footage to be added to the Policy.

44.    Mr. Stickelberger's coverages should have increased following his discussions and emails with Mr. Giresi. At $282.67 per square foot based on the original dwelling limit of $424,000.00, Mr. Giresi should have added an additional $212,002.50 in dwelling coverage to Mr. Stickelberger's Policy, for a total dwelling limit of $636,002.50. This would have also increased the other Policy limits to total as follows:

a.   Increased Building Structure Protection: $127,200.50

b.   Other Structures Protection: $63,600.25

     c.  Personal Property Protection: $381,601.50

    45.    Pursuant to Colorado law, Mr. Giresi also should have offered ordinance and law

coverage of 10% of the dwelling coverage: $63,600.25.

    46.    Below is an accurate representation of the Home on the Property before the

Marshall Fire:



    47.    On December 30, 2021, the Property was burned to the ground in the Marshall

Fire.

    48.    Below is an accurate representation of the Property after the Marshall Fire:



49.    The Policy limits are inadequate for Mr. Stickelberger to rebuild his home as it existed on the Property before the Marshall Fire.

50.    Following the Marshall Fire, Mr. Stickelberger discovered for the first time that his policy limits had been lowered.

51.    On or about May 19, 2022, Mr. Stickelberger initiated an administrative complaint with the Colorado Division of Insurance ("DOI").

52.     On or about June 8, 2022, General Security issued a letter responding to Mr. Stickelberger's DOI complaint, a true copy of which is attached as **Exhibit 2** and incorporated herein by reference.

53.     General Security informed the DOI that Mr. Stickelberger declined to purchase "Building Codes" coverage.

54.     Mr. Stickelberger was not offered "Building Codes" coverage.

55.     On or about March 24, 2023, Mr. Stickelberger submitted another complaint to the Colorado Division of Insurance regarding this reduction in his coverage.

56.     In General Security's responses to Mr. Stickelberger's second DOI complaint, attached as **Exhibit 3** and **Exhibit 4** and incorporated herein by reference, General Security stated that ordinance and law coverage ("Building Codes" coverage) was available as a drop down option on the Branch website when Mr. Stickelberger was shopping for the Policy.

57.     Building Codes coverage was not available as a drop down option on the Branch website when Mr. Stickelberger was shopping for the Policy.

58.     At the time when Mr. Stickelberger procured the quote for the Policy online, the Branch website had limited functionality and was not as it exists today.

59.     In order to bind the Policy, Mr. Stickelberger had to convey information to Mr. Giresi over the phone and had to trust that Mr. Giresi would accurately account for the information Mr. Stickelberger provided to him in writing the policy.

60.     In order to make changes to the Policy, Mr. Stickelberger again had to convey information to Mr. Giresi over the phone and had to trust that Mr. Giresi would accurately

account for the information Mr. Stickelberger provided to him in making any changes to the

Policy.

61.     On information and belief, up to the time of the Marshall Fire, General Security

did not have adequate internal policies in place to ensure that their insurance agents were

complying with Colorado law in offering policies in Colorado.

## FIRST CLAIM FOR RELIEF
### (Reformation of the Policy Against General Security)

62.     Mr. Stickelberger incorporates the above allegations as if fully set forth.

63.     Branch acted on behalf of General Security in procuring the Policy.

64.     Branch is regarded as representing General Security and not Mr. Stickelberger in

this controversy between Mr. Stickelberger and General Security.

65.     Branch intended to sell Mr. Stickelberger a policy with correct square footage.

66.     Branch intended to increase Mr. Stickelberger's coverage limits rather than

decrease them following the May 12, 2021 phone call.

67.     Upon information and belief, Branch and/or General Security made a mistake in

the processing or drafting of the Policy, resulting in the coverage limits being lowered rather than

increased following the May 12, 2021 phone call.

68.     General Security did not expressly communicate on May 25, 2021 that the

changes to the Property's details resulted in a decrease to the Coverage A limit of insurance.

69.     Mr. Stickelberger did not agree to nor sign off on the May 25, 2021 changes to the

Policy.

70.     General Security and its agents were responsible for the drafting of the Policy.

71.     The Policy does not express the true intent or agreement of the parties, as no party intended to decrease the coverage limits following the May 12, 2021 phone call.

72.     Reformation of the Policy to include dwelling limits of $424,000.00 and according increases is necessary for the Policy to reflect what was actually initially agreed to by Branch and Mr. Stickelberger.

73.     In the alternative, reformation of the Policy to include dwelling limits of $636,002.50 and according increases is necessary for the Policy to reflect what was actually initially agreed to by Branch and Mr. Stickelberger.

**SECOND CLAIM FOR RELIEF**
**(Negligence Against Branch and Against General Security through Vicarious Liability)**

74.     Mr. Stickelberger incorporates the above allegations as if fully set forth.

75.     Branch agreed to obtain increased limits based on the correct square footage of the Property.

76.     Branch had a legal duty to obtain such coverage or notify Mr. Stickelberger of its failure or inability to do so.

77.     Branch did not obtain the requested coverage and did not notify Mr. Stickelberger of its inability or failure to do so.

78.     Branch is an agent of General Security.

79.     Mr. Stickelberger suffered a total loss to the Property due to the Marshall Fire.

80.    General Security did not compensate Mr. Stickelberger for the loss given the actual rebuild cost of the Property.

81.    Mr. Stickelberger suffered monetary damages because of the lack of payment from General Security for the increased limits that should have been applied to the Policy.

82.    General Security was negligent in failing to insure the Property for a reasonable amount given the square footage and the quality of the finishes in the home, of which it was or should have been aware.

83.    Branch owed a legal duty to procure insurance as requested by Mr. Stickelberger.

84.    Branch was negligent in failing to procure insurance as requested by Mr. Stickelberger.

85.    As a direct and proximate result of General Security and Branch's negligence, Mr. Stickelberger is entitled to damages to be proved at trial.

### THIRD CLAIM FOR RELIEF
### (Breach of Contract against General Security)

86.    Mr. Stickelberger incorporates the above allegations as if fully set forth.

87.    The Policy is a contract.

88.    Mr. Stickelberger performed under the contract or any such nonperformance was waived by General Security.

89.    General Security has not paid the full Policy limits, despite this being a total loss, whether based on a dwelling limit of $424,000.00 and according increases, or a dwelling limit of $636,002.50 and according increases.

90.     As a result of General Security's breach of the Policy, Mr. Stickelberger is entitled to damages.

## FOURTH CLAIM FOR RELIEF
### (Violation of C.R.S. § 10-3-1115 & Relief Under C.R.S. § 10-3-1116 Against General Security)

91.     Mr. Stickelberger incorporates the above allegations as if fully set forth.

92.     Section 10-3-1115(1), C.R.S. forbids insurers like General Security from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of any first-party claimant.

93.     Section 10-3-1115(2), C.R.S., provides that "an insurer's delay was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action."

94.     Mr. Stickelberger is a first-party claimant within the meaning of C.R.S. § 10-3-1115(1)(b).

95.     General Security is an entity engaged in the business of insurance.

96.     General Security denied authorizing payment of covered benefits owed under the Policy applied for on May 6, 2021.

97.     General Security's denial was made without a reasonable basis.

98.     A reasonable insurer would not have attempted to settle Mr. Stickelburger's claim based on an application that was altered without notice to or the consent of Mr. Stickelburger.

99.     A reasonable insurer in General Security's position would have paid the full Policy limits based on the signed Policy application from May 6, 2021.

100.    General Security did not authorize payment of the dwelling Policy limit as stated in the May 6, 2023 application.

101.    Therefore, Mr. Stickelberger is entitled to damages awardable under C.R.S. § 10-3-1116(1), separate and apart from and in addition to those remedies and damages available under any other claims for relief.

**FIFTH CLAIM FOR RELIEF**
**(Bad Faith Breach of an Insurance Contract Against General Security)**

102.    Mr. Stickelberger incorporates the above allegations as if fully set forth.

103.    Under the Policy's implied covenant of good faith and fair dealing, General Security covenanted that it would deal with Mr. Ackerman fairly and honestly, and do nothing to impair, hinder, or injure their rights to benefits under the Policy.

104.    Through the act and omissions described above, General Security breached that covenant, as its conduct fell below the applicable common law and industry standards of care, violated the duties of good faith and fair dealing, and constituted the tort of bad faith breach of an insurance contract.

105.    General Security's acts and omissions were unreasonable and General Security knew so.

106.    General Security's acts and omissions were committed with reckless disregard of Mr. Ackerman's reasonable expectations as an insured under the Policy.

107.    General Security breached its duty of good faith and fair dealing through the following unreasonable acts, among others;

a.  Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured;

b.  Misrepresenting the pertinent facts and insurance policy provisions relating to coverages at issue;

c.  Failing to adopt and implement reasonable standards for the prompt payment of claims arising under the Policy;

d.  Failing to adequately convey the coverages available under the Policy;

e.  Not attempting in good faith to effectuate prompt, fair, and equitable settlement of the claim even though liability had become reasonably clear;

f.  Failing to ensure that the repair estimate it prepared was adequate to restore the property within a reasonable time to its condition before the loss;

g.  Intentionally deflating its estimates so that its payments would not equal the limits of insurance available under the Policy; and

h.  Other conduct to be revealed in discovery.

108.    General Security took unreasonable positions with respect to Mr. Ackerman's Policy and claim for benefits that a reasonably careful insurer would not take under the same or similar circumstances.

109.    General Security assumed unreasonable positions willfully and wantonly

110.    As a direct and proximate result of General Security's bad faith breach of the Policy, Mr. Ackerman suffered damages in amounts to be proved at trial.

## SIXTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty Against Branch)

111.    Mr. Stickelberger incorporates the above allegations as if fully set forth.

112.    Branch had a special relationship of entrustment with Mr. Stickelberger because Mr. Stickelberger had to rely on Branch to input details regarding his Property based on information he conveyed to Branch over the phone.

113.    Branch breached its fiduciary duties to Mr. Stickelberger when it procured insurance that did not reflect the information Mr. Stickelberger conveyed to Mr. Giresi over the phone and over email.

114.    As a result of Branch's breaches of its fiduciary duties under its special relationship of entrustment with Mr. Stickelberger, Mr. Stickelberger was deprived of the benefit of adequate coverage following the total loss of the Property in the Marshall Fire and has suffered losses and damages.

115.    Mr. Stickelberger requests entry of judgment in his favor for all losses and damages suffered as a result of Branch's breaches of fiduciary duty under its special relationship of entrustment with Mr. Stickelberger.

**Plaintiff demands a jury on all issues so triable.**

### PRAYER FOR RELIEF

Plaintiff Alexander Stickelberger respectfully requests that the Court enter judgment in his favor on all claims and award as follows:

A.  For all covered benefits due and owing under the policy, as reformed;

B.  For pre- and post- judgment interest, as permitted by law;

C.  For economic and non-economic damages as permitted by law;

D.  For attorneys' fees, court costs, and two times the covered benefits, as permitted under

C.R.S. § 10-3-1116(1).

E.  For such other relief as the Court deems fair and just.

Respectfully submitted this 30th day of December, 2023.

*s/ Katherine E. Goodrich*
Katherine E. Goodrich
Rodney J. Monheit

☐ **FORM 1.2. DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND**

DATE FILED: December 30, 2023 10:25 AM
FILING ID: B53A7ED6EBE2E
CASE NUMBER: 2023CV31224

| | |
|---|---|
| District Court ___Boulder___ County, Colorado<br>Court Address:<br> 1776 6th Street, Boulder, CO 80302<br><br>Plaintiff(s): Alexander Stickelberger<br>v.<br>Defendant(s): General Security National Insurance Company; Branch Financial Inc. | ▲ COURT USE ONLY ▲ |
| Attorney or Party Without Attorney (Name and Address):<br> Katherine Goodrich, No. 48853, MoGo LLC, 600 17th St, Ste 2800 S, Denver, CO 80202<br>Phone Number:    303-357-1317    E-mail: katie@mogollc.com<br>FAX Number:    Atty. Reg. #: | Case Number: |

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT,
COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT
AND JURY DEMAND**

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR),, Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases or in Water (CW) proceedings subject to sections 37-92-302 to 37-92-305, C.R.S. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

   ☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

   ☒ This party is seeking a monetary judgment against another party of more than $100,000.00, exclusive of interest and costs, as supported by the following certification:

   > By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000.

   **Or**

☐ Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3. ☒ This party makes a **Jury Demand** at this time and pays the requisite fee. *See* C.R.C.P. 38. (Checking this box is optional.)

**Date:** _____

_____
**Signature of Party**

**Date:** December 30, 2023

/s/Katherine E. Goodrich
_____
**Signature of Attorney for Party (if any)**_____

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third party complaint.

District Court, __Boulder__ County, Colorado
Court Address:

1776 6th Street, Boulder, CO 80302

Plaintiff    Alexander Stickelberger

v.

Defendant

General Security National Insurance Company; Branch Financial Inc.

DATE FILED: December 30, 2023 10:25 AM
FILING ID: B33A7ED6EBE2E
CASE NUMBER: 2023CV31224

▲    COURT USE ONLY    ▲

Case Number:

Division:          Courtroom:

## DISTRICT COURT CIVIL SUMMONS

**TO THE ABOVE NAMED DEFENDANT:** General Security National Insurance Company; Branch Financial Inc.

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated: __December 30, 2023__

/s/Katherine E. Goodrich
Attorneys for Plaintiff:
Rodney J. Monheit, No. 48919
Katherine E. Goodrich, No. 48853
MoGo LLC
600 17th St., Ste. 2800 South
Denver, CO 80202
Tel: 303.357.1317
rodney@mogollc.com
katie@mogollc.com

_____
Clerk of Court/Clerk

_____
Signature of Plaintiff

_____
Address of Plaintiff

_____

_____
Plaintiff's Phone Number

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files the case more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

Boulder District Court, Colorado
1776 6th Street, Boulder, CO 80302

Plaintiff(s) / Petitioner(s): **Alexander Stickelberger**

v.

Defendant(s) / Respondent(s): **General Security National Insurance Company, Branch Financial Inc.**

▲ COURTHOUSE ONLY ▲

DATE FILED: January 18, 2024 2:40 PM
FILING ID: B6123BB6D02B4
CASE NUMBER: 2023CV31224

Case No.: 2023CV31224

## AFFIDAVIT OF SERVICE

I, Moriah Matlock, being duly sworn, state:

I am 18 years or older and not a party to this action or a member of a corporation or organization that is a party to this action.

I served the following documents to General Security National Insurance Company in Arapahoe County, CO on January 18, 2024 at 1:56 pm at 1900 West Littleton Boulevard, Littleton, CO 80120 by leaving the following documents with Cole Stender who as Clerk at Corporation Service Company is authorized by appointment or by law to receive service of process for General Security National Insurance Company.

Exhibit 3
Cover Sheet
Exhibit 2
Complaint
Summons
Exhibit 4
Exhibit 1

White Male, est. age 25-34, glasses: N, Brown hair, 180 lbs to 200 lbs, 6' to 6' 3".
Geolocation of Serve: https://google.com/maps?q=39.6130266879,-105.0103905705
Photograph: See Exhibit 1

I DECLARE, UNDER OATH AND UNDER PENALTY OF PERJURY, UNDER THE LAWS OF THE STATE OF COLORADO, THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in

Arapahoe County ,

CO on 1/18/2024 .

/s/ *Moriah Matlock*

Signature
Moriah Matlock
+1 (303) 907-7116



