IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-00386-PAB-SBP

ALEXANDER STICKELBERGER,

     Plaintiff,

v.

GENERAL SECURITY NATIONAL INSURANCE COMPANY, and
BRANCH FINANCIAL INC.,

     Defendants.

---

## ORDER

---

     The matter before the Court is Defendant General Security National Insurance

Company's Motion for Partial Summary Judgment [Docket No. 32].  The Court has

jurisdiction pursuant to 28 U.S.C. § 1332.

## I.    BACKGROUND

### A.  Undisputed Facts[1]

     On April 26, 2021, plaintiff Alexander Stickelberger submitted a request to

defendant Branch Financial Inc. ("Branch") for an online quote for a bundled insurance

policy on his house in Superior, Colorado[2] and on his automobile.[3]  Docket No. 37 at 4,

---

[1] The following facts are undisputed unless indicated otherwise.

[2] The parties do not include an undisputed fact as to where Mr. Stickelberger's house is located.  However, in its answer, General Security National Insurance Company ("General Security") admits that Mr. Stickelberger was issued a policy for a property with an address in Superior, Colorado, Docket No. 10 at 4, ¶ 13, and each of the insurance policies submitted by the parties covers a property located at the same Superior address.  Docket No. 32-1 at 2; Docket No. 37-2 at 1; Docket No. 37-5 at 1.

[3] Neither party includes undisputed facts regarding Branch's relationship with General Security.  In the complaint, Mr. Stickelberger alleges that Branch is an Ohio-

¶ 1.  The dwelling protection coverage for Mr. Stickelberger's house was originally quoted as $367,000.  *Id.*, ¶ 2.  That same day, Mr. Stickelberger discussed increasing the protection limit over the telephone with a Branch representative, Mark Giresi.  *Id.*, ¶ 3.  After asking Mr. Stickelberger questions about the property, Mr. Giresi made adjustments that resulted in an increase in dwelling protection coverage to a "baseline" of $424,000.[4]  *Id.*, ¶ 4.

based insurance agency.  Docket No. 1-1 at 4, ¶ 10.  In its answer, General Security "admits Branch had limited authority to bind insurance policies" for General Security, that Mr. Stickelberger "submitted an application for insurance online on May 6, 2021 after communicating with a Branch representative by phone on that same date," and that "Branch sold Mr. Stickelberger a homeowner's insurance policy, number 996108220-home-001-SC."  Docket No. 10 at 4–6, ¶¶ 13, 17, 22.  The Court finds that it is an undisputed fact that Branch is an insurance agency that assisted Mr. Stickelberger in procuring insurance from General Security.

[4] In his statement of additional material facts, Mr. Stickelberger asserts that "Mr. Giresi asked Plaintiff questions about the property and made adjustments, which resulted in an increase in dwelling protection coverage to a 'baseline' of $424,000."  Docket No. 37 at 4, ¶ 4.  In support of his assertion, Mr. Stickelberger attaches a transcript of his conversation with Mr. Giresi wherein Mr. Giresi quotes a dwelling coverage limit of $424,000 to Mr. Stickelberger.  Docket No. 37-1 at 25, 90:7–10.  Defendant General Security National Insurance Company ("General Security") admits "a baseline quote was provided of $424,000, but denie[s] this quote 'resulted in an increase in dwelling protection coverage' as the quote is not binding on any of the parties."  Docket No. 43 at 2, ¶ 4.  Mr. Stickelberger also attaches a copy of a homeowners insurance policy dated May 23, 2021.  Docket No. 37-2.  The policy is titled "General Security National Insurance Company Personal Homeowners Policy," and each page of the policy indicates that it is issued by General Security.  *See id.* at 6.  In a table titled "COVERAGE DETAILS FOR THE INSURED PROPERTY," the "Limits of Liability" listed under dwelling protection coverage is $424,000.00.  *Id.* at 2.  However, as discussed below, it is undisputed that Mr. Stickelberger filed an amended insurance application and that General Security issued a policy based on this second application, which has a dwelling coverage limit of $423,000.  Docket No. 37 at 7–8, ¶¶ 24–25.  Mr. Stickelberger does not explain why one policy has a limit of $424,000 and the other has a limit of $423,000.  Because it is undisputed that General Security issued the second policy with a $423,000 dwelling protection coverage limit, but General Security denies that it issued a policy with a $424,000 dwelling coverage limit, the Court finds that it is undisputed only that Mr. Giresi quoted to Mr. Stickelberger a policy with a $424,000 dwelling coverage limit but not that such a policy was issued.

2

In another phone conversation on April 26, 2021, Mr. Giresi walked Mr. Stickelberger through how to virtually sign the insurance document for the home and automobile policies, stating, "[t]his is basically you just signing the application, confirming everything that you and I have gone over about both policies here."[5] *Id.* at 5, ¶ 9.

On April 27, 2021, Mr. Giresi left a voicemail for Mr. Stickelberger requesting another call to discuss the "new security system discount" for the home insurance policy and changes to "the auto price" based on Mr. Stickelberger's ex-wife no longer being covered by the policy. *Id.*, ¶ 10.  On April 29, 2021, Mr. Giresi explained that Mr. Stickelberger's premium for the home insurance policy had decreased because of the security system installed at the property. *Id.* at 5–6, ¶ 11.  Mr. Giresi ended the April 29, 2021 phone call by agreeing to send Mr. Stickelberger updated quotes for the home and automobile policies to reflect the decreased premiums. *Id.* at 6, ¶ 12.

On May 6, 2021, Mr. Stickelberger signed a homeowners insurance application that listed the coverage limits Mr. Stickelberger had discussed with Mr. Giresi.[6] *Id.*, ¶ 13.  On May 10, 2021, Mr. Giresi discussed certain changes to the insurance

---

[5] Mr. Stickelberger's statement of additional material facts indicates that this conversation occurred on April 26, 2024.  *See* Docket No. 37 at 5, ¶ 9.  However, because this undisputed fact is included in a series of facts regarding conversations that occurred in April 2021, the Court will assume that this is a typographical error and that this conversation also occurred in April 2021.

[6] General Security admits that Mr. Stickelberger signed the application but denies that the application correctly reflected the square footage of the property.  Docket No. 43 at 3, ¶ 13.  General Security does not deny any portion of Mr. Stickelberger's asserted fact, and the fact is deemed undisputed.  Moreover, even if the application did not accurately reflect the square footage of the property, Mr. Stickelberger submitted an amended application before General Security issued any insurance policy to Mr. Stickelberger.

application with Mr. Stickelberger.  *Id.*, ¶ 14.  Mr. Giresi explained that he was not able

to provide Mr. Stickelberger a discount for the security system and removed the security

system discount.  *Id.*, ¶¶ 15–17.  Mr. Giresi explained a change with respect to the

square footage of the property.  *Id.*, ¶ 17.  Mr. Giresi reviewed with Mr. Stickelberger a

substitution from "composite" shingles to "asphalt shingles."  *Id.* at 7, ¶ 18.  Mr. Giresi

explained that the changes in the application would reduce the replacement cost

estimate of the house from $424,000 to $419,000 and that, because Mr. Stickelberger

had removed his ex-wife as a named insured, his premium would be reduced.  *Id.*,

¶¶ 20–21.  Mr. Giresi told Mr. Stickelberger that the underwriter had "combed through

everything," that she had given Mr. Giresi "the stamp of approval," and that "this all

looked good as far as [t]he policy goes."  *Id.*, ¶ 23.

On May 13, 2021, Mr. Stickelberger signed and submitted a second insurance

application that listed the dwelling protection coverage limit as $423,000.  *Id.*, ¶ 24.  On

May 13, 2021, defendant General Security issued an insurance policy to Mr.

Stickelberger reflecting the May 13, 2021 application.[7]  *Id.* at 8, ¶ 25.

---

[7] General Security provides that same response for Mr. Stickelberger's twenty-
fifth and twenty-sixth assertions of undisputed fact.  *See* Docket No. 43 at 3–4, ¶¶ 25–
26.  The response states that the "policy is a document that speaks for itself, and
General Security denies any allegations inconsistent with that document. General
Security notes Plaintiff cites to Branch Financial Inc.'s ("Branch's") Answer, which is not
binding on General Security."  *Id.*  The responses do not deny any portion of Mr.
Stickelberger's assertions of fact.  Moreover, the dwelling protection limits Mr.
Stickelberger identifies are reflected in the policies he provides.  *See* Docket No. 37-5 at
2; Docket No. 37-4 at 3; Docket No. 32-1 at 3.  Therefore, the Court deems these facts
undisputed.

On May 25, 2021, General Security bound a policy for Mr. Stickelberger's property with a dwelling protection coverage limit of $402,000.[8] *Id.*, ¶ 26; Docket No. 32 at 2, ¶ 2. As issued, the policy provides a $402,000 dwelling protection limit, an increased building structure protection limit of $80,400, a $241,200 personal property protection limit, and an other structures protection limit of $40,200. Docket No. 32 at 2, ¶ 2. Neither Branch nor General Security expressly communicated to Mr. Stickelberger that it had lowered his dwelling protection coverage limit.[9] Docket No. 37 at 8, ¶ 27.

---

[8] The parties do not explain what precipitated the issuance of the May 25, 2021 policy. It is an undisputed fact that General Security issued an insurance policy to Mr. Stickelberger on May 13, 2021 with a dwelling coverage limit of $423,000 and that it "bound" a policy with a dwelling protection coverage limit of $402,000 on May 25, 2021. *See* Docket No. 37 at 7–8, ¶¶ 24–26.

[9] General Security denies this fact. Docket No. 43 at 4, ¶ 27. General Security asserts that "Branch sent Plaintiff an email on May 25, 2021 notifying him of the policy change, which resulted in a check being issued for a refund, which was cashed." *Id.* General Security cites to Branch's response to Mr. Stickelberger's requests for admission. *Id.* (citing Docket No. 37-13 at 5). Mr. Stickelberger asked Branch to admit that "Mr. Stickelberger did not sign an application that reflects a dwelling limit of $402,000." Docket No. 37-13 at 5. Branch responded that:

> Branch admits that the application Mr. Stickelberger submitted did not reflect a dwelling limit of $402,000 but states this is because the policy was already bound and otherwise denies that Mr. Stickelberger was not aware that the dwelling limits of his policy decreased. In fact, Branch sent Mr. Stickelberger an email on May 25, 2021 with a subject line "Inspection Complete/RCE Change – Stickelberger/996108220" notifying him of the policy change, which resulted in a check being issued for a refund, which was cashed. Further, the dwelling limits were clearly disclosed in the subsequently issued policy on the Declarations Page and the policy notice entitled "Your Estimated Home Replacement Cost."

*Id.* However, this is consistent with Mr. Stickelberger's evidence that neither General Security nor Branch "expressly communicated to [Mr. Stickelberger] that they [had] lowered his policy limits." Docket No. 37 at 8, ¶ 27. Mr. Stickelberger cites a June 8, 2022 letter sent to him from General Security in which it states that, "[o]n behalf of General Security National Insurance Company and our agency partner Branch, we want to extend our sincere apologies . . . for any frustration we caused you by not expressly communicating on May 25, 2021, that the changes to your home details, resulted in a

In December 2021, Mr. Stickelberger's house was destroyed by the Marshall

Fire.  Docket No. 32 at 2, ¶ 3.  Mr. Stickelberger filed an insurance claim based on the

destruction of his house.  *Id.*  General Security issued $798,962.22 in payments to Mr.

Stickelberger relating to the loss of his property.  *Id.*, ¶ 4.  General Security paid Mr.

Stickelberger $533,500 for the "Dwelling Limits" under the policy.  Docket No. 37 at 8,

¶ 29.  A break-down of the $533,500 payment shows that General Security paid Mr.

Stickelberger $402,000 under the "Dwelling Limit," $80,400 for "Increased Building

---

decrease to your Dwelling Protection-Coverage A ("Coverage A") limit."  Docket 37-6 at
1.  The letter explains that:

> During the underwriting review period, we conducted an inspection of your
> property and reviewed our rating to your home to ensure accuracy.  Because
> your home was a split-level, we followed our normal practice of rating it as a 1-
> story home with a basement.  The square footage total at the time appeared
> correct, so the only update was to reflect that your basement was "finished."  This
> change resulted in a 5.22% decrease to the replacement cost estimate, and it
> reduced your Coverage A limit from $423,000 to $402,000.  There was also a
> premium decrease of $67.22, for which you received a refund.  We sent you an
> email confirming that the home details had changed as well as the premium
> decrease and refund.  Your policy documents were also updated in your account
> and accessible to you.  However, we did not expressly communicate that this
> change resulted in a decrease to the Coverage A limit, and we realize the
> decrease in Coverage A is likely the opposite of what you anticipated.  We
> apologize for any confusion this may have caused and for failing to thoroughly
> explain the impact changes you requested.  It is important to note that we have
> reviewed your concern and verified that your policy was rated correctly.

*Id.* at 2.  Because General Security's letter to Mr. Stickelberger repeatedly states that
neither it nor Branch expressly communicated to Mr. Stickelberger that his policy limits
had decreased and because General Security produces no evidence that it or Branch
did expressly communicate that the dwelling protection coverage limit had decreased,
the Court finds that it is undisputed that neither Branch nor General Security specifically
told Mr. Stickelberger that his dwelling protection limit had been decreased.  Moreover,
even if the Court were to find that this fact was disputed, for the reason discussed
below, the Court would find that Mr. Stickelberger has produced sufficient evidence to
create a dispute of material fact, which would prohibit summary judgment on his breach
of contract claim.

Protection," $25,500 for "Other Structures," $20,100 for "Debris Removal," and $5,500

for "Tree/shrub/plant." *Id.* at 8–9, ¶ 30; *see also* Docket No. 37-8. Mr. Stickelberger's

policy limit for other structures is $40,200, and his policy limit for trees and shrubs is

$20,100.[10] Docket No. 37at 9, ¶ 34.[11]

---

[10] General Security does not dispute that Mr. Stickelberger's policy includes such limits for other structures and for trees and shrubs, but it asserts that Mr. Stickelberger's policy includes a sub-limit of $500 for any tree or shrub. Docket No. 43 at 4, ¶ 34. In a footnote, Mr. Stickelberger appears to concede this fact. *See* Docket No. 37 at 11 n.3. However, for the reasons discussed below, the Court finds that the applicability of the sub-limit is immaterial to the Court's resolution of the motion for partial summary judgment and will not address the issue.

[11] Mr. Stickelberger asserts that his costs for rebuilding his house exceeded the policy's tree/shrub/plants and other structures coverage limits. Docket No. 37 at 10, ¶ 36. Mr. Stickelberger supports this fact with his own affidavit, in which he states that the "cost for me to replace my trees, shrubs, lawn, and other plants exceeded $20,100.00" and that the "cost for me to replace my detached structures including the concrete patios, shed with detached raised patio, decorative landscaping rocks, and sprinkler system, exceeded $40,200.00." Docket No. 37-11 at 2, ¶¶ 7–8. Mr. Stickelberger states that "I am currently out of the country and upon my return intend to find and produce receipts, invoices and estimates substantiating these costs." *Id.*, ¶ 9. Mr. Stickelberger has not produced receipts, invoices, or estimates substantiating his rebuilding costs. General Security admits that Mr. Stickelberger asserts that he incurred these costs, but argues that (1) Mr. Stickelberger has never raised the issue of not being paid the full policy limit for these expenses before his response to General Security's motion for partial summary judgment and (2) that he has not produced receipts, invoices, or estimates that would substantiate his costs. Docket No. 43 at 5, ¶ 36. "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'" *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991)). Although Mr. Stickelberger's affidavit is likely based on personal knowledge, it is conclusory and self-serving. Therefore, the Court does not find that it is an undisputed fact that Mr. Stickelberger's costs exceeded the policy's tree/shrub/plant and other structures coverage limits. However, for the reasons discussed below, whether Mr. Stickelberger can substantiate his costs is immaterial because Mr. Stickelberger's claims are not based on General Security's failure to pay the policy's tree/shrub/plant and other structures coverage limits.

### B. Procedural History

On December 30, 2023, Mr. Stickelberger filed suit against General Security and Branch in the District Court for Boulder County, Colorado.  Docket No. 1-1 at 2.  In the complaint, Mr. Stickelberger brings five claims against General Security, including one claim for negligence, one claim for breach of contract, one claim for common law bad faith breach of an insurance contract, and one claim for statutory bad faith breach of an insurance contract.  *Id.* at 15–18, ¶¶ 74–110.  Mr. Stickelberger also brings a claim for reformation of his General Security policy to include a dwelling protection coverage limit of either $424,000.00 or $636,002.50.  *Id.* at 14–15, ¶¶ 62–73.  On February 8, 2024, General Security removed the case to federal court.  Docket No. 1.

On July 2, 2024, General Security filed its motion for partial summary judgment on Mr. Stickelberger's breach of contract claim and bad faith claims.  Docket No. 32.  General Security maintains that the undisputed facts show that it has satisfied its contractual obligations by paying Mr. Stickelberger all he is entitled to under the policy and that judgment should enter for General Security on these claims.  *Id.* at 1.  On August 9, 2024, Mr. Stickelberger responded, Docket No. 37, and General Security replied on September 6, 2024.  Docket No. 43.

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense. *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011). By contrast, where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. Of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III.    ANALYSIS

### A.  Breach of Contract

General Security argues that Mr. Stickelberger's breach of contract claim fails because General Security has paid Mr. Stickelberger the benefits that he is entitled to

under the policy bound on May 25, 2021.  Docket No. 32 at 1.  It maintains that Mr.

Stickelberger is arguing that "General Security is liable for bad faith and breach of

contract for failure to pay benefits owed under what he argues *should* be the policy's

limits, rather than what the policy limits actually are."  *Id.*

Mr. Stickelberger responds that he can demonstrate that General Security

breached the parties' contract by failing to pay benefits up to the policy limits for

replacing the trees, shrubs, and other structures around his property that were

destroyed by the fire.  Docket No. 37 at 11–12 ("The policy limits for other structures

($40,200.00) and trees/shrubs/lawn ($20,100.00) are greater than what was included in

the February 8, 2022 payment. . . .  There is at least an issue of fact as to whether

Plaintiff is entitled to full payment under the 'as-issued' policy for $14,700 under Other

Structures coverage, and $14,600 under Trees, Shrubs, Plants and Lawns coverage.").

However, as General Security points out, Mr. Stickelberger's theory that General

Security has not paid him the full cost of replacing the trees, shrubs, and other

structures on his property does not appear in the complaint.  Docket No. 43 at 5

("Plaintiff has *never* requested additional payments under these coverages – not in his

1) original adjustment of the claim; 2) complaints to the Colorado Department of

Insurance; 3) Complaint, or 4) claimed damages listed in his Rule 26 Disclosures.").

Courts in this district have held that "[n]ew theories of liability are not

appropriately raised for the first time in a summary judgment response" and that

"[a]ttempts to amend one's pleading through summary judgment briefing are improper."

*Purser v. Gilliland*, No. 22-cv-02374-GPG-RTG, 2024 WL 5276679, at *12 (D. Colo.

Nov. 21, 2024) (citing *Fuqua v. Lindsey Mgmt. Co.*, 321 F. App'x 732, 734 (10th Cir.

2009) (unpublished) ("Normally a claim or theory that is not adequately raised in the complaint will not be considered."); *Bedore v. Nationstar Mortg. LLC.*, No. 22-cv-00179-SKC, 2024 WL 1555059, at *3 (D. Colo. Apr. 10, 2024), *aff'd*, 2024 WL 4432612 (10th Cir. Oct. 7, 2024) ("Plaintiff may not use his response to the Motion for Summary Judgment to add new legal theories or claims he never asserted in his Complaint."); *Reyes v. Jensen*, No. 18-cv-03115-STV, 2020 WL 9719323, at *8 (D. Colo. June 19, 2020) ("A claim not raised in the complaint, not to mention a claim not raised in the original complaint or the first, second, or third amended complaints, and initially asserted in a response to a summary judgment motion is not properly before the court." (citations and internal quotation marks omitted))).  Nowhere in Mr. Stickelberger's complaint does he mention costs he incurred in rebuilding his house or the cost of replacing the trees, shrubs, or other structures on his property.  *See*, *generally*, Docket No. 1-1.  Instead, Mr. Stickelberger's breach of contract claim states that "General Security has not paid the full Policy limits, despite this being a total loss, whether based on a dwelling limit of $424,000.00 and according increases, or a dwelling limit of $636,002.50 and according increases."  *Id.* at 16, ¶ 89.  As such, the Court finds that Mr. Stickelberger's response improperly advances a new legal theory based on conduct absent from the complaint.  The Court will not consider Mr. Stickelberger's argument that he can demonstrate General Security breached the contract by not paying the policy limits to replace Mr. Stickelberger's trees, shrubs, and other structures.[12]

---

[12] The Tenth Circuit has suggested that "the inclusion of new allegations in a response to a motion for summary judgment" may be treated "as a potential request to amend the complaint."  *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003).  However, the court has upheld a district court declining to grant leave to amend where the plaintiffs "never sought leave to file an amended complaint, they never asked that

Mr. Stickelberger argues that he has raised a dispute of material fact as to whether General Security is liable for breach of contract by failing to honor Mr. Stickelberger's reasonable expectation that he had a dwelling protection coverage limit of $423,000, rather than $402,000.  Docket No. 37 at 11.  Under Colorado law,[13] "a plaintiff suing for breach of contract bears the burden of proving the following elements by a preponderance of the evidence: (1) the existence of a contract, (2) the plaintiff's performance of the contract or justification for nonperformance, (3) the defendant's failure to perform the contract, and (4) the plaintiff's damages as a result of the defendant's failure to perform the contract."  *Univ. of Denver v. Doe*, 547 P.3d 1129, 1139 (Colo. 2024).  Mr. Stickelberger maintains that, although General Security may have paid the May 25, 2021 policy limits, under the doctrine of reasonable expectations, Mr. Stickelberger is entitled to $423,000 of dwelling protection because that was the amount of protection he included in his application and the amount of protection included in the May 13, 2021 policy.  Docket No. 37 at 17–18.

Colorado courts recognize that insurance contracts create "significant potential for insurers to take advantage of or mislead insureds."  *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1048 (Colo. 2011).  Public policy favors protecting consumers by requiring insurers to fully and fairly disclose the degree of insurance protection a policy

---

their response to summary judgment be treated as a request to amend, and they never filed an amended complaint."  *Fuqua*, 321 F. App'x at 735.  On January 3, 2024, Mr. Stickelberger filed a motion to amend his complaint.  Docket No. 54.  The Court does not construe Mr. Stickelberger's response to the motion for summary judgment as a separate request for leave to amend his complaint.

[13] The parties assume that Colorado law applies.  *See, e.g.*, Docket No. 32 at 3; Docket No. 37 at 15.  Accordingly, the Court will apply Colorado law.  *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

actually provides. *Id.* at 1049. As a result, all insurance policies in Colorado are carefully scrutinized and subject to the doctrine of reasonable expectations, which "obligates insurers to clearly and adequately convey coverage-limiting provisions to insureds." *Id.* at 1048. The doctrine does not replace traditional principles of contract interpretation, but instead requires courts to interpret insurance policy terms and interactions with insurers based on an objective, reasonable insured standard. *Id.* at 1050–51. The Colorado Supreme Court has held that the doctrine applies in circumstances where a policy's "coverage-provisions may not be ambiguous in a technical sense, . . . but are ambiguous from the perspective of an ordinary reader." *Id.* at 1050, 1053 ("we envisioned courts making use of the doctrine precisely where no ambiguity existed, so that courts would not strain to find an ambiguity that could be construed against the drafter; instead, courts would have the authority to avoid a manifestly unfair result not by reference to any purported ambiguity, but by reference to reasonable expectations").

In Colorado, the reasonable expectations of insureds have succeeded over a policy's language in two situations:

    (1) where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue; and

    (2) where, because of circumstances attributable to an insurer, an ordinary, objectively reasonable person would be deceived into believing that he or she is entitled to coverage, while the insurer would maintain otherwise.

*Residences at Olde Town Square Ass'n v. Travelers Cas. Ins. Co. of Am.*, 430 F. Supp. 3d 743, 755–56 (D. Colo. 2019) (quoting *Bailey*, 255 P.3d at 1048–49).

Mr. Stickelberger does not argue that the language of his policy is ambiguous such that he failed to understand the policy's dwelling protection limit. *See* Docket No. 37 at 15–18. Moreover, the language of Mr. Stickelberger's policies is clear. In the table listing "COVERAGE DETAILS FOR THE INSURED PROPERTY," the May 13, 2021 policy lists the liability limit for "Dwelling Protection" as $423,000.00. Docket No. 37-5 at 2. In the same section, the May 25, 2021 policy lists the dwelling protection limit as $402,000.00. Docket No. 32-1 at 3. Instead, Mr. Stickelberger argues that he was deceived by Branch and General Security into believing he had the higher policy limit. Docket No. 37 at 17–18.

In order for reasonable expectations to prevail over policy language based on deception, an "insured must demonstrate through extrinsic evidence that its expectations of coverage are based on specific facts which make these expectations reasonable.'" *Allen v. United Servs. Auto. Ass'n*, 907 F.3d 1230, 1234 (10th Cir. 2018) (quoting *Bailey*, 255 P.3d at 1054 (alterations omitted)). "The bare allegations of policyholders that they expected certain coverage are insufficient to establish grounds for relief sounding in reasonable expectations." *Bailey*, 255 P.3d at 1054 (citation and quotation omitted). Instead, the "specific facts must show that, through procedural or substantive deception attributable to the insurer, an objectively reasonable insured would have believed he or she possessed coverage later denied by an insurer." *Allen*, 907 F.3d at 1234 (quoting *Bailey*, 255 P.3d at 1054).

"Neither procedural nor substantive deception requires actual deception." *Domokos v. Shelter Mut. Ins. Co.*, 416 F. Supp. 3d 1209, 1223 (D. Colo. 2019). "'Substantive deception' . . . usually refers to background facts about the insurance

transaction that make it reasonable for the insured to believe he or she is buying a particular coverage." *Id.* "Failing to write a policy containing that coverage is substantive deception attributable to the insurer, because an insurance company is expected to know the policyholder's objectively reasonable expectations of insurance coverage and to sell a policy suitable for the policyholder's needs." *Id.* (quotations and citations omitted) (citing *Bailey*, 255 P.3d at 1053–54). "Procedural deception generally refers to failing to adequately communicate the coverage exclusion to the insured." *Id.* (citation, alterations, and quotations omitted). An "insurer that wishes to avoid liability under an insurance contract 'must not only use clear and unequivocal language evidencing its intent to do so, but it must also call such limiting conditions to the attention of the insured.'" *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1011 (10th Cir. 2000) (quoting *Leland v. Travelers Indem. Co.*, 712 P.2d 1060, 1064 (Colo. Ct. App. 1985)); *Bailey*, 255 P.3d at 1055 ("Partly because of the risk for procedural deceptiveness, . . . we embraced the rule that insurers seeking to avoid liability must do so in clear and unequivocal language and must call such limiting conditions to the attention of the insured" (citation, quotation, and alterations omitted)).

Mr. Stickelberger argues that, "[w]ithout adequate notification to the contrary from the defendants, Plaintiff maintained an objectively reasonable expectation that his coverage limits were the same as in the prior policy." Docket No. 37 at 18. As such, Mr. Stickelberger argues that defendants undermined his reasonable expectations through procedural deception and that there is a dispute of material fact as to whether General Security's failure to pay him $423,000 was a breach of the party's agreement. *See id.*

General Security responds that, "unless and until an insurance contract is reformed, an insurer has no obligation to conform to such 'reformed' policy.'"  Docket No. 32 at 3 (quoting *Sewell v. Safeco Ins. Co. of Am.*, No. 06-cv-000150-EWN-MJW, 2007 WL 2071617, at *6 (D. Colo. July 19, 2007) (citing *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1239 (10th Cir. 2003)); *Brennan v. Farmers All. Mut. Ins. Co.*, 961 P.2d 550, 556 (Colo. App. 1998) (affirming dismissal of breach of contract claim when policy was subsequently reformed by trial court)).  General Security claims that, until the Court rules on Mr. Stickelberger's claim for contract reformation, there is no contract in existence that grants Mr. Stickelberger a right to payment.  *Id.*  General Security further asserts that reformation of Mr. Stickelberger's policy based on his reasonable expectations would be inappropriate because "courts will not reform policies if the insured's expectations are 'contrary to the ordinary meaning of the policy and therefore unreasonable.'"  Docket No. 43 at 7 (quoting *2-BT, LLC v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, No. 12-cv-02167-PAB-KLM, 2013 WL 5729932, at *8 (D. Colo. Oct. 18, 2013)).

General Security's cited authority does not support the proposition that a plaintiff cannot pursue both a claim for reformation and a claim of breach of contract based on an insured's reasonable expectations.  In *Sewell*, 2007 WL 2071617, at *5, the court determined that both the plaintiff's reformation claim and breach of contract claim failed because she made "no argument as to: (1) why the Policy language would be susceptible to her proffered alternative interpretation; (2) why such an interpretation would be reasonable; or (3) whether she intended such an interpretation at the time the Policy was executed and purchased."  In *Clark*, 319 F.3d at 1239, and *Brennan*, 961

16

P.2d at 556, the courts considered the plaintiffs' breach of contract claims in light of whether their contracts should be reformed based on the Colorado Court of Appeals interpretation of the Colorado Auto Accident Reparations Act.  No party in *Sewell*, *Clark*, or *Brennan* advanced the argument the defendant insurers had breached the contracts based on the plaintiffs' reasonable expectations.  *See Sewell*, 2007 WL 2071617, at *5; *Clark*, 319 F.3d at 1239; *Brennan*, 961 P.2d at 556.

Instead, courts have considered whether a plaintiff has demonstrated a breach of contract based on the insurer violating the insured's reasonable expectations.  *See 2-BT*, 2013 WL 5729932, at *9 (finding defendant was entitled to summary judgment on breach of contract claim because the insured did not violate plaintiff's reasonable expectations); *Bailey*, 255 P.3d at 1055 (finding plaintiff was not entitled to summary judgment on her breach of contract claim because she had not demonstrated defendant violated her reasonable expectations); *Nguyen v. Am. Fam. Mut. Ins. Co.*, No. 15-cv-0639-WJM-KLM, 2015 WL 5867266, at *10 (D. Colo. Oct. 8, 2015) ("The reasonable expectations doctrine, however, is a basis on which to bring a claim for breach of contract (i.e., to argue for coverage beyond the policy's literal terms)."); *Residences at Olde Town Square*, 430 F. Supp. 3d at 758 n.15 ("it appears that Plaintiff's only theory by which it might recover the difference between Defendant's deductible calculation and Plaintiff's calculation is breach of contract, by way of the reasonable expectations doctrine"); *Skiles v. Mercado*, 2016 WL 183921, at *9 (S.D.W. Va. Jan. 14, 2016) ("the doctrine of reasonable expectations may supply the relevant basis for Plaintiff's breach of contract claim"); *Abraham Linc Corp. v. Spinnaker Ins. Co.*, 2024 WL 3433661, at *10 (N.D.W. Va. July 16, 2024) ("the doctrine of reasonable expectations is not a stand-

alone cause of action but rather a rule of construction applicable to insurance contracts"
(citation omitted)); *c.f. Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 316 (1st Cir. 2022)
("Massachusetts recognizes two distinct theories of breach of contract between a
student and an educational institution. Under the 'reasonable expectations' theory, a
court must consider the standard of reasonable expectation – what meaning the party
making the manifestation, the university, should reasonably expect the other party to
give it." (citation and quotations omitted)). Therefore, the Court rejects General
Security's argument that Mr. Stickelberger cannot maintain a breach of contract claim
because the Court has not ruled on Mr. Stickelberger's claim to reform the contract.

Mr. Stickelberger maintains that courts have used the doctrine of reasonable
expectations to hold insurance providers to coverage limits included in previously issued
policies when the insurer fails to adequately notify an insured that the subsequent policy
reduced his coverage. Docket No. 37 at 17. Mr. Stickelberger relies on the Colorado
Supreme Court's decision in *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 246 P.3d
651, 655 (Colo. 2011). *Id.* In *Shelter*, the court found that the "owner's original [car
insurance] policy insured permissive drivers at levels greater than the minimum
amounts required under Colorado law, while the renewal policy reduced coverage to the
amounts required under Colorado law." *Shelter*, 246 P.3d at 658. The insurer provided
the owner with the following notice:

> When you pay this renewal premium, you will be issued our new Automobile
> Insurance Policy. You should take some time to become familiar with its
> provisions and the responsibilities you have as a policyholder under this contract.
>
> New definitions have been added to assist in policy coverage interpretation. The
> policy has been rearranged in some areas for ease of reading.

Some changes will affect coverage you now have and will require decisions on
your part.  You may want to discuss these items with your agent.

*Id.*  The court found that the "notice was inadequate because it did not sufficiently

negate the owner's reasonable expectation that his renewal policy was unchanged from

his original policy by clearly and unequivocally calling his attention to the 'step-down'

provision."  *Id.*  Specifically, the court found that the "notice did not inform the owner of

any of the specific changes in his policy, nor were those changes marked in the policy

or stated in the Declarations page.  In this way, Shelter's notice provided a general

instruction for the owner to read through his policy, which is insufficient."  *Id.* at 658–59

("it is insufficient for an insurer merely to provide a new policy and instruct 'the insured

to carefully read' it" (citing *Gov't Emp. Ins. Co. v. United States*, 400 F.2d 172, 175 (10th

Cir. 1968) (applying ).  Mr. Stickelberger maintains that *Shelter* is analogous to the

circumstances of this case because he did not receive notice that the policy issued on

May 25, 2021 reduced his coverage.  Docket No. 37 at 18.

General Security argues that Mr. Stickelberger's reliance on *Shelter* is misplaced

because *Shelter*'s holding that, "[u]nless adequately notified otherwise, an insured may

rely on the assumption that the renewal contract provisions remain unchanged" applies

only in the context of insurance policy renewals.  Docket No. 43 at 8.  General Security

maintains that the policy "at issue was not a renewal" and that Mr. Stickelberger's

arguments "about 'adequate notification' are inapposite."  *Id.*

However, in *Bailey*, the Colorado Supreme Court relied on *Shelter* as one

example of procedural deception.  *Bailey*, 255 P.3d at 1055.  The *Bailey* court did not

indicate that circumstances surrounding an insurance renewal were unique.  *See id.*

Instead, the court recognized that the doctrine of reasonable expectations could

19

overcome a defendant's procedural deception in different circumstances, including

when an insurer renews a policy under different terms. *Id.* at 1054–56 (citing *Davis v.*

*M.L.G. Corp.*, 712 P.2d 985, 992 (Colo. 1986) (the doctrine of reasonable expectations

applies when procuring insurance for a rental car); *Leland*, 712 P.2d at 1063 (the

doctrine of reasonable expectations applies when insured failed to timely pay insurance

premium)); *see also Sanchez v. Connecticut Gen. Life Ins. Co.*, 681 P.2d 974, 977

(Colo. App. 1984) (the doctrine of reasonable expectations applies in procuring

temporary insurance because an "insurer who wishes to avoid liability must not only use

clear and unequivocal language evidencing its intent to limit temporary coverage, but it

must also call such limiting conditions to the attention of the applicant"). *Bailey*

"embrace[s] the broader concept of reasonable expectations" which "obligates insurers

to clearly and adequately convey coverage-limiting provisions to insureds." *Bailey*, 255

P.3d at 1048, 1053. Mr. Stickelberger's arguments regarding the adequacy of his notice

are relevant.

To prevail on his claim for breach of contract, Mr. Stickelberger "must

demonstrate through extrinsic evidence" that his expectation of coverage up to

$423,000 was "based on specific facts which make the[ ] expectation[ ] reasonable,'"

despite the May 25, 2021 policy's clear language that the dwelling protection coverage

limit is $402,000. *Allen*, 907 F.3d at 1234. In doing so, Mr. Stickelberger may rely on

the fact that an "insurer that wishes to avoid liability under an insurance contract 'must

not only use clear and unequivocal language evidencing its intent to do so, but it must

also call such limiting conditions to the attention of the insured.'" *Pirkheim*, 229 F.3d at

1011 (quoting *Leland*, 712 P.2d at 1064); *Bailey*, 255 P.3d at 1055.

It is undisputed that, on April 26, 2021, Mr. Stickelberger submitted an online quote for a bundled home and automobile insurance policy through Branch's website. Docket No. 37 at 4, ¶ 1. The dwelling protection coverage for Mr. Stickelberger's house was initially quoted at $367,000, but after Mr. Stickelberger talked with Mr. Giresi, Mr. Stickelberger received a quote for a policy with $424,000 of coverage. *Id.*, ¶¶ 2, 4. After further conversations with Mr. Giresi about the property's square footage, its security system, and the impact of removing Mr. Stickelberger's ex-wife from the policy, Mr. Stickelberger signed and submitted an insurance application that included $423,000 in dwelling protection coverage. *Id.* at 6–7, ¶¶ 13–21, 24. Moreover, as part of the conversations with Mr. Giresi, Mr. Giresi told Mr. Stickelberger that the underwriter had reviewed the application and had given it her stamp of approval. *Id.* at 7, ¶ 23.

It is undisputed that, on May 13, 2021, General Security issued an insurance policy with a dwelling protection limit of $423,000, *id.* at 8, ¶ 25, but General Security issued another policy with a dwelling protection limit of $402,000 on May 25, 2021. *Id.*, ¶ 26. Finally, it is undisputed that Branch and General Security did not expressly communicate to Mr. Stickelberger that they had lowered his dwelling protection policy limit. *Id.*, ¶ 27.

There are no undisputed facts demonstrating that General Security brought the reduction in Mr. Stickelberger's coverage to his attention.[14] *See Pirkheim*, 229 F.3d at

---

[14] In its reply, General Security relies on facts not included in its motion for summary judgment to support the argument that it provided Mr. Stickelberger with adequate notice of that change in his policy. *See*, *e.g.*, Docket No. 43 at 4, ¶ 27 ("Branch sent Plaintiff an email on May 25, 2021 notifying him of the policy change, which resulted in a check being issued for a refund, which was cashed."). These are not undisputed facts and cannot support General Security's motion for summary judgment. Moreover, even if the Court were to assume that General Security's

1011; *see also UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 503 (3d Cir.

2004) (applying Pennsylvania law) ("where the insurer or its agent creates in the insured

a reasonable expectation of coverage that is not supported by the terms of the policy

that expectation will prevail over the language of the policy" because "an insurer may

not make unilateral changes to an insurance policy unless it both notifies the

policyholder of the changes and ensures that the policyholder understands their

significance" (citation omitted)).  However, Mr. Stickelberger has produced evidence

wherein General Security admits that its notice did "not expressly communicat[e]" that

_____

assertions of fact were undisputed, the asserted facts would not demonstrate that
General Security is entitled to summary judgment.  For example, General Security
asserts that Mr. Stickelberger was sent an email notifying him of the change in his
policy.  *Id.*  General Security does not provide a copy of the email sent to Mr.
Stickelberger regarding the change in coverage.  The Court cannot determine whether
the email adequately called Mr. Stickelberger's attention to the fact that the May 25,
2021 policy reduced the coverage limits or instead only instructed Mr. Stickelberger to
review the new policy for possible changes, like the insufficient notice in *Shelter*, 246
P.3d at 658.  Moreover, General Security's claim that the fact Mr. Stickelberger cashed
a check for the reduction in his premium is evidence that Mr. Stickelberger had
adequate notice of the change in his policy is unpersuasive.  It is undisputed that Mr.
Giresi told Mr. Stickelberger that his premium would be reduced by taking his ex-wife off
the policy.  Docket No. 37 at 7, ¶¶ 20–21.  Therefore, viewed in the light most favorable
to Mr. Stickelberger, the fact that Mr. Stickelberger cashed a check based on a
reduction in his premium is consistent with Mr. Stickelberger being unaware of the
decrease in his coverage limits and knowing only that the removal of his ex-wife had
impacted his premiums.  Finally, General Security provides no evidence that it gave Mr.
Stickelberger a copy of his insurance policy that included the reduced dwelling coverage
limits.  Instead, General Security suggests that "Plaintiff does not contest he had access
to his policy via the Branch app, where he could have accessed the Policy at any time."
Docket No. 43 at 8.  This argument suggests that General Security's notice did not
include a copy of the May 25, 2021 policy.  Because an insurer must do more than
provide a new policy with instructions "to carefully read" it, General Security's email,
coupled with Mr. Stickelberger's access to the new policy "via the Branch app," does not
demonstrate the General Security provided Mr. Stickelberger with adequate notice or
that General Security is entitled to summary judgment.  *See Shelter*, 246 P.3d at 658
("it is insufficient for an insurer merely to provide a new policy and instruct 'the insured
to carefully read' it" (citing *Gov't Emp. Ins. Co.*, 400 F.2d at 175)).

the changes to how General Security classified Mr. Stickelberger's basement resulted in a decrease to his dwelling protection coverage limit and that this "is likely the opposite of what [Mr. Stickelberger] anticipated." Docket No. 37-6 at 1–2. Considering the "totality of the circumstances involved in the transaction from the point of view of an ordinary layperson," *Shelter*, 246 P.3d at 658 (citation omitted), and viewing the evidence in the light most favorable to Mr. Stickelberger, *Bausman*, 252 F.3d at 1115, the Court finds that Mr. Stickelberger has raised a dispute of material fact as to whether General Security paying him $402,000 under the dwelling protection coverage limit contravened his reasonable expectations. As such, General Security has not shown that it is entitled to summary judgment on Mr. Stickelberger's breach of contract claim.

### B. <u>Statutory and Common Law Bad Faith</u>

To prevail on a claim for statutory bad faith delay or denial of insurance benefits, a plaintiff must establish that his insurer (1) denied or delayed payment of a claim for benefits owed and (2) the denial or delay lacked a reasonable basis. *Am. Fam. Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1186 (Colo. 2018); Colo. Rev. Stat. § 10-3-1115(1)(a). An insurer's delay is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2). To prevail on a claim for bad faith delay or denial of insurance benefits under Colorado common law, a plaintiff must establish that his insurer (1) acted unreasonably under the circumstances; and (2) knew of, or had reckless disregard for, the unreasonableness of its actions. *Goodson v. Am. Standard Ins. Co. of Wisc.*, 89 P.3d 409, 415 (Colo. 2004). "The only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis." *Cooper v. Shelter Gen. Ins. Co.*, 653 F. Supp. 3d 873, 878 (D. Colo. 2023) (alterations

omitted) (quoting *Williams v. Owners Insurance Co.*, 621 Fed. App'x. 914, 919 (10th Cir.

2015) (unpublished)).  "By contrast, to prove a first-party claim of common law bad faith,

a plaintiff must show not only that the insurer's conduct in processing or denying a valid

claim was unreasonable but also that the insurer knew its conduct was unreasonable or

recklessly disregarded the unreasonableness of its conduct."  *Id.* (citing *Travelers*

*Insurance Co. v. Savio*, 706 P.2d 1258, 1275–76 (Colo. 1985)).  "Accordingly, a claim of

common law bad faith imposes a more exacting standard of proof than a statutory

claim."  *Id.* (citation omitted)); *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 975

(Colo. App. 2011) (the "burden of proving th[e] statutory claim is less onerous than that

required to prove a claim under the common law for breach of the duty of good faith and

fair dealing").

    "Under either rubric, an insurer acts unreasonably if it delays or denies

authorizing payment of a covered benefit without a reasonable basis for that action."

*Cooper*, 653 F. Supp. 3d at 878 (alterations omitted) (citing Colo. Rev. Stat. § 10-3-

1115(2); *Savio*, 706 P.2d at 1275).  The determination of whether an insurer has

breached its duties to the insured is one of reasonableness under the circumstances.

*Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008).  In other

words, the question is whether a reasonable insurer under similar circumstances would

have denied or delayed payment of the claim.  *Id.*  The reasonableness of an insurer's

conduct must be determined objectively, based on proof of industry standards.  *Savio*,

706 P.2d at 1274.

    The Tenth Circuit has held there is "nothing unreasonable about [an insurance

company's] denial of [a plaintiff's] claim because it had a reasonable basis for its

action." *Wagner v. Am. Fam. Ins. Co.*, 569 F. App'x 574, 580 (10th Cir. 2014)

(unpublished); *see also Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1226 (10th Cir.

2016)).  Evidence that the insurer's benefits decisions are "fairly debatable" weighs

against a conclusion that the insurer acted unreasonably.  *Etherton*, 829 F.3d at 1226

(citing *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 759–60 (Colo. App. 2012)).

However, although "'fair debatability is part of the analysis of a bad faith claim, it is not

necessarily sufficient, standing alone, to defeat such a claim,' and it is not 'outcome

determinative as a matter of law.'" *Gardner v. State Farm Mut. Auto. Ins. Co.*, 639 F.

Supp. 3d 1158, 1166–67 (D. Colo. 2022) (quoting *Sanderson v. Am. Fam. Mut. Ins. Co.*,

251 P.3d 1213, 1217–18 (Colo. App. 2010)) ("Stated another way, even if Defendant is

correct that Plaintiff's UIM claim was fairly debatable, Defendant's reliance on fair

debatability is insufficient, standing alone, to entitle it to summary judgment on Claim

Three.").  In Colorado, acting "without a reasonable basis" has been construed to mean

pursuing a groundless position that is not supported by credible evidence.  *Cooper*, 653

F. Supp. 3d at 878 (quoting *Masters v. Safeco Ins. Co. of Am.*, No. 20-cv-00631-PAB-

NRN, 2021 WL 4326269, at *5 (D. Colo. Sept. 23, 2021) (citing *Bd. of Cnty. Comm'rs v.

Auslaender*, 745 P.2d 999, 1001 (Colo. 1987))).

       General Security maintains that it is entitled to summary judgment on Mr.

Stickelberger's bad faith claims because Mr. Stickelberger cannot demonstrate that

General Security acted unreasonably in paying Mr. Stickelberger benefits up to the

policy limits of the May 25, 2021 policy.  Docket No. 32 at 5 ("Here, Plaintiff's bad faith

claims cannot stand because General Security did not breach the contract currently in

place.  General Security paid out full limits on the Policy as written.").

Mr. Stickelberger responds that, because he has demonstrated that General Security violated his reasonable expectations, Mr. Stickelberger has also shown that General Security acted in bad faith in denying his claim for dwelling protection coverage up to $423,000.  Docket No. 37 at 18–19.  He argues that General Security's "motion with respect to the bad faith claims must also fail because its argument essentially stands or falls with the breach claim."  *Id.*

The Court disagrees that Mr. Stickelberger's bad faith claims depend on the resolution of his breach of contract claim.  *See Pacheco v. State Farm Mut. Auto. Ins. Co.*, No. 23-cv-00305-NYW-SBP, 2024 WL 1239942, at *3 (D. Colo. Mar. 22, 2024) ("where a plaintiff's bad faith claim is not based exclusively on the denial of coverage, but is also based on the defendant's alleged bad faith in the investigation, defense, handling, or settling of a claim, the absence of coverage will not necessarily preclude a bad faith claim"); *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 571 (Colo. App. 2003) ("Claims for bad faith breach and willful and wanton breach of an insurance contract sound in tort.  These claims exist independently of the liability imposed by an insurance contract.").  Instead, the Court must consider whether General Security's denial of Mr. Stickelberger's claim was unreasonable.

Mr. Stickelberger maintains that the "reasonableness of an insurer's conduct is evaluated under the circumstances that existed at the time, including the state of the law" and that Colorado law permits an insured to hold an insurer to the insured's reasonable expectations of what he believes his coverage to be.  Docket No. 37 at 19 (emphasis omitted) (quoting *Anderson v. State Farm Mut. Auto. Ins. Co.*, 416 F.3d 1143, 1148 (10th Cir. 2005)).  He contends that, because General Security knew that it

had not communicated to Mr. Stickelberger that his policy limit had decreased, General

Security knew that paying Mr. Stickelberger the May 25, 2021 policy limits violated his

reasonable expectations.  *Id.*

In its reply, General Security again argues that Mr. Stickelberger relies on cases

that apply only to the renewal of insurance policies and that his arguments regarding his

reasonable expectations should therefore be disregarded.  Docket No. 43 at 9.  The

Court has rejected General Security's argument that Mr. Stickelberger's reasonable

expectations are not relevant to his breach of contract claim.  Moreover, General

Security provides no support for the proposition that an insured's reasonable

expectations are irrelevant in determining whether an insurer acted in bad faith in

denying coverage.  While it is true that a bad faith claim is evaluated from the

perspective of the insurer, *see Krisa v. Equitable Life Assur. Soc.*, 113 F. Supp. 2d 694,

704 (M.D. Pa. 2000) (applying Pennsylvania law) (plaintiff has not "cited any case that

supports the proposition that bad faith is to be assessed in the context of the *insured's*

reasonable expectations"), General Security has not shown that it may knowingly

disregard Mr. Stickelberger's reasonable expectations when denying coverage.

For the reasons discussed above, the Court finds that there is a dispute of

material fact as to whether General Security issuing an amended policy on May 25,

2021 with a lower coverage limit frustrated Mr. Stickelberger's reasonable expectations.

The June 8, 2022 letter sent to Mr. Stickelberger is evidence not only of Mr.

Stickelberger's reasonable expectations at the time his policies were issued, but is also

evidence of the arguable unreasonableness of General Security's denial of his claim

seeking benefits of $423,000.  *See* Docket 37-6.  The letter states that, "[o]n behalf of

General Security National Insurance Company and our agency partner Branch, we want

to extend our sincere apologies . . . for any frustration we caused you by not expressly

communicating on May 25, 2021, that the changes to your home details, resulted in a

decrease to your Dwelling Protection-Coverage A ("Coverage A") limit," and that "we

realize the decrease in Coverage A is likely the opposite of what you anticipated."  *Id.* at

1–2.  Therefore, although it is undisputed that General Security has paid Mr.

Stickelberger the policy limits under the May 25, 2021 policy, Docket No. 32 at 2, ¶ 4;

Docket No. 37 at 8–9, ¶ 30, Mr. Stickelberger's evidence demonstrates that there is a

dispute of material fact as to whether General Security knowingly disregarded the fact

that Mr. Stickelberger would have a reasonable expectation of coverage up to $423,000

when denying his claim.  Mr. Stickelberger has therefore shown that there is a dispute

of fact as to whether a reasonable insurer under similar circumstances would have

denied his claim.[15]  The Court will deny General Security's motion for partial summary

---

[15] The parties dispute whether General Security's conduct violated Colorado's
Unfair Claims Settlement Practices Act, Colo. Rev. Stat. § 10-3-1104, which is relevant
in determining whether General Security's denial of Mr. Stickelberger's claim is
consistent with industry standards.  *See*, *e.g.*, *Etherton*, 829 F.3d at 1227 (considering
whether defendant's conduct violated § 10-3-1104(1)(h)(IV) and § 10-3-1104(1)(h)(XIV)
in determining whether defendant complied with industry standards); *Savio*, 706 P.2d at
1274 (the reasonableness of an insurer's conduct is determined based on proof of
industry standards).  Section 10-3-1104(1)(h)(IX) states that it is an unfair settlement
practice for an insurer to attempt "to settle claims on the basis of an application which
was altered without notice to, or knowledge or consent of, the insured."  Colo. Rev. Stat.
§ 10-3-1104(1)(h)(IX).  Mr. Stickelberger argues that General Security has violated this
provision because General Security made unilateral changes to his insurance policy
without providing him notice.  Docket No. 37 at 19–20.  General Security argues that it
did not violate § 10-3-1104(1)(h)(IX) because it did not amend Mr. Stickelberger's
application.  Docket No. 43 at 10.  Rather, General Security claims that it later amended
Mr. Stickelberger's policy during the underwriting process and that it provided Mr.
Stickelberger notice of the change.  *Id.*  The Court finds that it is unnecessary to resolve
whether General Security violated § 10-3-1104(1)(h)(IX).  Regardless, General Security

judgment as it has not shown that it is entitled to summary judgment on any of Mr.

Stickelberger's claims.

IV.    **CONCLUSION**

Therefore, it is

**ORDERED** that Defendant General Security National Insurance Company's

Motion for Partial Summary Judgment [Docket No. 32] is **DENIED**.

DATED March 25, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

has failed to demonstrate that it is entitled to summary judgment on Mr. Stickelberger's
bad faith claims.